UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD POLLICK,

       Plaintiff,

                                                   Case Number 11-12420-BC

v.                                              Honorable Thomas L. Ludington

KIMBERLY-CLARK CORP.,

       Defendant.
_____/

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This case involves a dispute between the respective designers of "diaper jeans" and "jeans diapers"; the issue is whether the latter infringed on the copyright of the former. In February 1981, Plaintiff Richard Pollick obtained a copyright registration for his "diaper jeans," which are, as the name suggests, diapers designed to resemble jeans. Compl. ¶ 8. In October 1981, Plaintiff submitted a copy of diaper jeans artwork to Defendant Kimberly-Clark Corp., the manufacturer of Huggies® diapers. *Id.* ¶ 21. Sometime later, Defendant began manufacturing and marketing its Huggies® "jeans diapers," which are also diapers designed to resemble jeans. *See id.* ¶¶ 32–35.

On June 3, 2011, Plaintiff brought suit alleging copyright infringement. ECF No. 1. Specifically, the complaint alleges that Defendant created, displayed, and distributed unauthorized reproductions of Plaintiff's copyrighted work, as well as created unauthorized derivatives of the work, in violation subsections (1), (2), (3), and (5) of 17 U.S.C. § 106.[1]

---

[1] Plaintiff does not, however, raise a trade dress claim under the Lanham Act, 15 U.S.C. § 1125(a). *See generally Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 768 (6th Cir. 2005) (enumerating elements of trade dress claim). Accordingly, the Court expresses no opinion as to whether such a claim would be cognizable in this case.

Compl. ¶¶ 31–34. Images of the "diaper jeans" and "jeans diapers" are attached to the complaint.[2] They are reproduced below:

**Plaintiff's "Diaper Jeans" (Front)**  **Plaintiff's "Diaper Jeans" (Back)**

 

**Defendant's "Jean Diapers" (Front)**  **Defendant's "Jean Diapers" (Back)**

 

Now before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Defendant first argues that the complaint should be dismissed

---

[2] Plaintiff attaches full-page images of his diaper jeans, but only thumbnail images of Defendant's jean diapers. As the Court may properly take judicial notice of the allegedly infringing design on a Rule 12(b)(6) motion, however, the Court considers the authenticated images reproduced here. *See Davis v. Am. Broad. Cos., Inc.*, No. 1:10-CV-167, 2010 WL 2998476, at *5 (W.D. Mich. July 28, 2010); Def.'s Mot. Ex. A (authenticating images).

because Plaintiff's claim is based on the general idea of diapers as jeans rather than Plaintiff's unique design for diaper jeans. Moreover, Defendant argues, the complaint should be dismissed because the designs themselves are not substantially similar — "the only commonality between Plaintiff's design and that of [Defendant] is that they both attempt to express the idea of a diaper that is supposed to look like jeans — but those expressions manifest themselves in an entirely different way." Def.'s Br. Supp. Mot. Dismiss 10, ECF No. 8 ("Def.'s Br."). Additionally, Defendant seeks attorney fees and costs. Opposing the motion, Plaintiff first contends that he "is not trying to protect the 'individual generic or otherwise common elements necessary to represent jeans' . . . rather, he is asserting rights over the creative expression of diapers designed to resemble jeans." Pl.'s Br. Opp'n Mot. Dismiss 8, ECF No. 10 ("Pl.'s Br."). Responding to Defendant's substantial similarity argument, Plaintiff writes that "unless an observer is specifically instructed to inspect, as the Defendant would have one do, any differences between the common elements of the diaper product represented by both parties (such as zippers and button placement), the 'aesthetic appeal' of both parties' concepts is essentially the same." *Id*. at 10. For the reasons discussed below, the Court will grant Defendant's motion, dismiss Plaintiff's complaint, and award Defendant attorney fees and costs.

**I.**

To survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555–

56). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation marks omitted).

A court must accept all factual content in the pleading as true, however, "the tenet that a court must accept as true all of the allegations contained in a [pleading] is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

## II.

The Constitution's Copyright and Patent Clause grants to Congress the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. In exercising this power, Congress has chosen to confer very different types of statutory monopolies to authors and inventors. The Copyright Act protects authors' expressions, but not their ideas, providing in pertinent part: "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . . . In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . ." 17 U.S.C. § 102(a),

(b); s*ee generally Fred Fischer Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 647–55 (1943) (discussing historical development of copyright laws). The Patent Act, in contrast, protects inventors' ideas, providing in pertinent part: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101; *see generally Bilski v. Kappos*, 130 S.Ct. 3218, 3239–50 (2010) (Steven, J., concurring) (discussing historical development of patent laws).

Discussing the difference, the Supreme Court explains: "Unlike a patent, a copyright gives no exclusive right to the art disclosed: protection is given only to the expression of the idea not the idea itself." *Mazer v. Stein*, 347 U.S. 201, 217 (1954) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 193 F.2d 162 (1st Cir. 1951)); *see also Mihalek Corp. v. Michigan*, 814 F.2d 290, 294 (6th Cir. 1987) (citing *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976)) ("It is the expressions of the ideas, not the general concepts, that are to be examined particularly, because ideas themselves and general concepts are not copyrightable.").

"The limited monopoly granted to the artist is intended to provide the necessary bargaining capital to garner a fair price for the value of the works passing into public use." *Stewart v. Abend*, 495 U.S. 207, 229 (1990). Underlying the grant of monopoly power is the goal of encouraging artistic production — that is, the Copyright Act is intended to "stimulate artistic creativity." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

With power to exclude, however, comes the power to stifle competition. Indeed, the Copyright and Patent Clause, properly understood, "reflects a balance between the need to encourage innovation and the avoidance of monopolies which stifle competition without any concomitant advance in the Progress of Science and useful Arts." *Bilski*, 130 S.Ct. at 3252

(Stevens, J., concurring) (internal quotation marks omitted) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989)). Consequently, the Copyright Act necessarily involves a delicate balancing of promoting the initial creation of artistic works while simultaneously encouraging further innovation. "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Fogerty*, 510 U.S. at 527 (internal quotations and alterations omitted) (quoting *Feist Publ'ns*, *Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 349–50 (1991)).

"The copyright is limited to those aspects of the work — termed 'expression' — that display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). "To be original, an element [of a work] must both be an independent creation of its author and involve at least minimal creativity." *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009). A claim of copyright infringement, therefore, has two basic elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns*, 499 U.S. at 361. In this case, Defendant concedes the first element but contests the second — that original elements of Plaintiff's copyrighted work were copied.

Copying may be established by the plaintiff showing: "(1) access to the allegedly-infringed work by the defendant[;] and (2) a substantial similarity between the two works at issue." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) (citing *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 276–77 (6th Cir. 1988). Again, Defendant concedes the first element for purposes of its 12(b)(6) motion, but contests the second — whether Plaintiff's diaper jeans and Defendant's jean diapers are "substantially similar."

"The Sixth Circuit has condensed the substantial-similarity inquiry into a two-part test: first, the court must identify which aspects of the artist's work, if any, are protectible by copyright[;] and, second, determine whether the allegedly infringing work is substantially similar to the protectible elements of the artist's work." *Bridgeport Music*, 585 F.3d at 274 (internal quotation marks and alterations omitted) (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). "To complete the first step," the Sixth Circuit explains, "the court must 'filter' out elements of the work that are not original to the author." *Bridgeport Music*, 585 F.3d at 274 (quoting *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 (6th Cir. 2004)). "*Scènes à faire*" (French: "scenes for action"), "the indispensable or standard aspects of a work, or those that 'follow directly from unprotectable ideas' should be filtered out as well." *Bridgeport Music*, 585 F.3d at 274 (footnote omitted) (quoting *Murray Hill*, 361 F.3d at 320); *see also Black's Law Dictionary* 1372 (8th ed. 2004) (defining "*scènes à faire*" as "[s]tandard or general themes that are common to a wide variety of works and are therefore not copyrightable").

After separating out the unprotectable ideas from the original expressions, the question is "whether a lay observer would consider the works as a whole substantially similar to one another." *Bridgeport Music*, 585 F.3d at 274 (quoting *Murray Hill*, 361 F.3d at 320).  Of course, "as a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other." *Mihalek Corp.*, 814 F.2d at 295 (alteration omitted) (quoting *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980)).  Works are substantially similar when "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook [them], and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v.*

*Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).  "When a court is called upon to consider whether the works are substantially similar," as in this case, "no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.' " *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)).

In *Beaudin v. Ben and Jerry's Homemade, Inc.*, for example, the court rejected the plaintiff's copyright infringement claim regarding "cow hats," caps designed to resemble to the coats of Holstein cows "with a white background and irregularly-shaped black spots."  896 F. Supp. 356, 357 (D. Vt. 1995), *cited in Winfield Collection, Ltd. v. Gemmy Indus. Corp.*, 147 Fed. App'x. 547, 551 (6th Cir. 2005).  Summarily dismissing the plaintiff's claim, the court explained: "copyright protection is only afforded the plaintiff's particular designs, and not the idea of manufacturing hats which look like a Holstein cow's coat."  896 F. Supp. at 359.

Similarly, in *Russell v. Trimfit, Inc.*, a woman registered copyrights for "toe socks."  428 F. Supp. 91, 92 (E.D. Pa. 1977), *cited in Winfield Collection*, 147 Fed. App'x. at 551.  She later brought suit arguing "that by virtue of the copyrights she obtained an exclusive right in toe socks, and that defendant has infringed her copyrights by manufacturing and selling toe socks." 428 F. Supp. at 93.  The court summarily dismissed her claim, explaining: "In this case we have encountered no difficulty in distinguishing between the idea and the expression of the idea.  The defendant manufactured and sold toe socks.  There is no allegation that the defendant at any time produced, manufactured, sold or distributed any copies of the plaintiff's drawings."  *Id*. at 93.

Here, Plaintiff asserts that "he is asserting rights over the creative expression of diapers designed to resemble jeans."  Pl.'s Br.  8.  Plaintiff's copyright, however, does not confer the protection Plaintiff claims.  That is, it does not give Plaintiff a broad right to exclude others from

-8-

manufacturing diapers that are "designed to resemble jeans." Rather, it protects the much narrower right to exclude others from producing "substantially similar" versions of diaper jeans — those versions so similar that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook [them], and regard their aesthetic appeal as the same." *Peter Pan Fabrics*, 274 F.2d at 489.

Although enumerating all of the differences between the parties' diapers in this case is both inefficient and unnecessary — as a simple visual comparison shows that not only are the diapers not substantially similar, they are substantially different — a brief review of some of the more distinct differences will illustrate the wide divergence in aesthetic appeal. First, the color of the diapers: Plaintiff's diaper comes in two colors, white or light blue; Defendant's comes in one color, dark blue. Second, the pattern of the diapers: Plaintiff's diaper comes in two patterns, flat white or flat light blue; Defendant's comes in one pattern, distressed blue denim. Third, the color of the stitching: Plaintiff's diaper has red stitching; Defendant's has either black or gold stitching. Fourth, the front pockets: Plaintiff's diaper has two pockets, indicated by a straight line and a curved line; Defendant's has three pockets, the larger two pockets indicated by a single curved line and a rivet at the top, and the third, smaller pocket inset within one of the larger pockets and indicated by a gently curving line and a rivet at the top. Fifth, the front fly: Plaintiff's diaper indicates the fly with a single straight line (with no button); Defendant's indicates the fly with a straight line and curved line, a button, and thicker hashed lines representing reinforced stitching. Sixth, the front belt loops: Plaintiff's diaper has none; Defendant's has two, one above each larger pocket with thicker lines representing reinforced stitching. Seventh, the back belt loops: Plaintiff's diaper has none; Defendant's has three with thicker lines representing reinforced stitching. Eighth, the back label: Plaintiff's diaper has an

embroidered "Diaper Jeans" on the left side of right pocket; Defendant's diaper has a patch with "Huggies® Little Movers EST. 1975" above the right pocket between the belt loops. And ninth, the back waist: Plaintiff's waist is indicated by a single straight line and single v-line; Defendant's is indicated by a double straight line and v-line. In sum, the aesthetics of the diapers are substantially different. The complaint will be dismissed with prejudice.

### III.

"In any civil action under this title," the Copyright Act provides, "the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. This discretion is circumscribed, however, because unlike in civil rights actions, in copyright actions "[t]he grant of fees and costs is the rule rather than the exception and they should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (internal quotation marks and alterations omitted) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 380 (5th Cir. 2004)). Moreover, the court's "discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music*, 520 F.3d at 592 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

This is not to suggest, of course, that the court cannot deny attorney fees in the appropriate case. In *Fogarty*, the Supreme Court listed several non-exclusive factors for courts to consider in deciding whether or not to award fees, including: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."

510 U.S. at 535 n.19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). "The factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered." *Bridgeport Music*, 520 F.3d at 592 (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004)).

In this case, Plaintiff's claim of copyright infringement has support in neither law nor fact. At the time the complaint was filed, the law had been long established that Plaintiff's copyright did not confer a broad right to exclude others from producing diapers "designed to resemble jeans" — but a narrow right to prevent others from reproducing Plaintiff's particular design of diaper jeans. *See Mazer v. Stein*, 347 U.S. 201, 217 (1954) (quoted *supra*); *Mihalek Corp. v. Michigan*, 814 F.2d 290, 294 (6th Cir. 1987) (same). Moreover, factually no reasonable observer would conclude that Plaintiff's expression of his "diaper jeans" are substantially similar to Defendant's expression of its "jeans diapers" — indeed, a reasonable observer would conclude that the two expressions are substantially different.

Perhaps frivolous, Plaintiff's complaint was plainly objectively unreasonable. Moreover, compensating Defendant under the circumstances furthers the purposes of the Copyright Act. As the Court explained in *Fogerty*: "While it is true that *one* of the goals of the Copyright Act is to discourage infringement, it is by no means the *only* goal of that Act." 510 U.S. at 526 (citing *Lieb*, 788 F.2d at 155). As discussed above, the Copyright Act involves a balancing of interests — promoting the initial creation of artistic works while simultaneously encouraging further artistic expressions. "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Fogerty*, 510 U.S. at 527 (internal quotations and alterations omitted) (quoting *Feist Publ'ns*, 499 U.S. at 349–50). By seeking to exclude others who would further develop his idea, Plaintiff's

suit was inconsistent with one of the primary purposes of the Copyright Act. The Court shall award Defendant attorneys fees and costs. Defendant shall be further directed to file supplemental papers enumerating what attorney fees and costs it incurred in this case. Plaintiff shall be permitted to respond.

### IV.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the hearing scheduled for September 27, 2011, at 3:00 p.m. is **CANCELED** because the parties papers provide the necessary factual and legal information to decide the motion. *See* E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that Defendant is **DIRECTED** to file a supplemental brief on the amount of reasonable attorney fees and costs which Defendant is entitled to recover from Plaintiff. Defendant shall have thirty days from the date of this order to file its brief.

It is further **ORDERED** that Plaintiff may file a response brief on the amount of reasonable attorney fees and costs within fourteen days of service of the defendant's supplemental brief.

                                                        s/Thomas L. Ludington  
                                                        THOMAS L. LUDINGTON  
                                                        United States District Judge

Dated: September 23, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 23, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS
